Gardiner *v.* Commissioner of Correction.

JOHN C. GARDINER *vs.* COMMISSIONER OF CORRECTION
& another.[1]

Suffolk.    May 14, 1976. — June 21, 1977.

Present: HALE, CJ, KEVILLE, GOODMAN, GRANT, ARMSTRONG, & BROWN, JJ.

*Imprisonment,* Good conduct deductions, Escape. *Statute,* Construction. *Commissioner of Correction,* Good conduct deductions.

Under the provisions of G. L. c. 127, §§ 83B and 129, the Commissioner of Correction had no authority to restore good conduct deductions to a prisoner who had been convicted of the crime of escape from a prison camp under § 83C. [427-429] GOODMAN, J., and BROWN, J., dissenting.

CIVIL ACTION commenced in the Superior Court on December 13, 1974.

The action was heard by *Morse,* J.

The case was submitted on briefs.

*Joseph F. Flynn* for the plaintiff.

*Francis X. Bellotti,* Attorney General, *John J. Irwin, Jr., & Robert V. Greco,* Assistant Attorneys General, for the defendants.

---

[1] Superintendent of the Massachusetts Correctional Institution, Monroe.

ARMSTRONG, J.   On July 9, 1965, while serving a sentence for armed robbery, the plaintiff escaped from the State prison camp at Warwick. On May 8, 1973, he was apprehended and was subsequently tried and convicted for the crime of escape from a prison camp. G. L. c. 127, § 83C. Pursuant to § 83B[2] of that chapter, the plaintiff forfeited 213 days of good conduct deductions which he had accumulated prior to the escape. On September 18, 1974, the plaintiff requested that the defendant Commissioner restore those good conduct deductions. The Commissioner denied the request on the ground that under § 83B he had no power "to consider restoration of the 213 days good conduct deductions that you forfeited by escaping . . .."

The plaintiff then commenced this action for a judicial determination that the Commissioner was authorized to restore the good conduct deductions. The judge who heard the action in the Superior Court on an agreed statement of facts ruled that the Commissioner lacked that authority, and the plaintiff appealed.

Section 83B explicitly required the forfeiture of the plaintiff's accumulated good time deductions. It makes no provision for restoration thereof. But the plaintiff argues that such a provision is seen to be implicit in § 83B when it is compared with § 129 of the same chapter.

Unlike § 83B, which applies only to prison camps, § 129 deals with correctional institutions generally, including prison camps. Section 129[3] authorizes good conduct deductions from sentences, but contains two provisions by which such deductions may be lost. The first relates to infractions of prison rules: "If a prisoner violates any rule of his place

---

[2] Section 83B, as amended through St. 1972, c. 172, § 2, provides in pertinent part: "If a prisoner escapes or attempts to escape from a prison camp all deductions from the sentence he is then serving shall be thereby forfeited." In *Wood* v. *Commissioner of Correction,* 363 Mass. 79 (1973), the Supreme Judicial Court held that the forfeiture imposed by § 83B applies only to the deductions accumulated up to the time of the escape, and does not make a prisoner ineligible for good conduct deductions on the portion of the sentence not yet served at the time of the escape.

[3] As amended through St. 1967, c. 379.

of confinement, the commissioner . . . , upon the recommendation and evidence submitted [by the officer in charge of the institution where the prisoner is confined] . . . shall decide what part, if any, of such good conduct deduction . . . shall be forfeited by such violation, and may likewise determine, in the event of the prisoner's subsequent good conduct, whether any or all of such deduction shall be restored." The second relates to convictions for criminal offenses: "If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions hereunder from the new sentence or sentences of imprisonment."[4]

The plaintiff first argues that the word "forfeit," used both in § 83B and in the rules infractions portion of § 129, is capable of being understood either in the sense of a permanent loss or in the sense of loss with a possibility of restoration; and that, since it has been held that the two sections are to be treated as using identical language in a uniform sense (*Wood* v. *Commissioner of Correction,* 363 Mass. 79, 82, fn.5 [1973]), and since § 129 uses the word "forfeit" in the sense of loss with a possibility of restoration, the same meaning must be given to the word "forfeit" in § 83B. The argument is patently unsound, because the possibility of restoration is not derived from the word "forfeit," but from § 129's explicit provision to that effect; and

---

[4] The quoted provision replaced an earlier provision, appearing in St. 1959, c. 445, § 2, which, in language parallel to § 83B, provided that if a prisoner should "commit any offense of which he shall be convicted and sentenced, all deductions hereunder from the former sentence of imprisonment of such prisoner shall be thereby forfeited." The quoted provision is the result of an amendment made by St. 1963, c. 535. A contention was made in *Gregoire, petitioner,* 355 Mass. 399 (1969), that the 1963 amendment had impliedly repealed § 83B, since (it was argued) the Legislature could not have intended that one who escapes from a prison camp (as opposed to one who escapes from other correctional institutions) should suffer the double penalty of loss of good conduct deductions from the initial sentence (§ 83B) and loss of entitlement to good conduct deductions from the sentence imposed for the escape (§ 129). The Supreme Judicial Court rejected the contention.

the absence of similar language in § 83B makes it clear that the Legislature's intention was precisely contrary to the plaintiff's first argument.

The plaintiff next argues that, although his escape was a crime, it was also a breach of prison rules,[5] thus bringing the offense within the rules infraction portion of § 129, which permits restoration of forfeited good conduct deductions. This reasoning would effect the anomaly that one whose conduct violates both statute and rule would be accorded greater leniency than one who violates only a statute. It would also attribute to the Commissioner of Correction a power to modify statutes by administrative regulation. The argument is without merit.

The plaintiff's final argument is that the description in § 83B of the offense of escape differs from the description in § 83C[6] of the crime of escape, and from this he concludes that § 83B must be referring to the "institutional infraction of escape" rather than the crime of escape. But we think that the correct interpretation of the pertinent words in § 83B ("a prisoner [who] escapes or attempts to escape from a prison camp") is that they refer to one who commits either of the two crimes (escape and attempt to escape) which are described in § 83C.[7] The operation of § 83B does not depend on the existence of an administrative regulation prohibiting escape. None has been mentioned in the cases

---

[5] So far as appears in this record, there is no rule expressly forbidding escape.

[6] Section 83C, inserted by St. 1951, § 755, provides: "A prisoner who escapes or attempts to escape from any prison camp *or from land adjacent thereto or from the custody of the officer thereof or while being conveyed to and from any such camp* . . . shall be punished by imprisonment . . . ." The emphasis is added to indicate the language which does not appear in § 83B, upon which the plaintiff relies.

[7] The somewhat offhand suggestion to the contrary made by the Attorney General in *Gregoire, petitioner,* 355 Mass. 399 (1969), referred to in the dissenting opinion of Goodman, J., was not accepted by the court as a ground of decision. The principal point the Attorney General appears to have been making is that forfeiture under § 83B may be imposed on an administrative determination, whether or not the crime is prosecuted to a conviction. Contrast § 129 and *Patrick* v. *Commissioner of Correction,* 352 Mass. 666, 668 (1967).

which have arisen under § 83B.[8] Moreover, a contrary conclusion would avail the plaintiff naught, because the more particular provision made for an institutional infraction of escape from a prison camp in § 83B would clearly prevail over the general provisions of § 129 relative to rules infractions of any type in any prison. There is nothing inconsistent or unharmonious about a statute which provides a severe penalty for particular conduct which would warrant only a lesser penalty under a general statute in its absence. Nor do we perceive any ambiguity in § 83B which would justify invoking the principle that penal statutes are to be strictly construed.

*Judgment affirmed.*

This case was argued before a panel comprised of Justices Keville, Goodman and Armstrong. The other Justices took part in the decision pursuant to Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

GOODMAN, J. (dissenting, with whom Brown, J., joins). The substance of the plaintiff's contention is that G. L. c. 127, § 83B,[1] must be read together with the fourth sentence of the first paragraph of G. L. c. 127, § 129, which authorizes the Commissioner to restore forfeited good conduct deductions "in the event of the prisoner's subsequent good conduct."[2] From our examination of these provisions, and

---

[8] *Gregoire, petitioner,* 355 Mass. 399 (1969). *Wood* v. *Commissioner of Correction,* 363 Mass. 79 (1973). *Commonwealth* v. *Sneed,* 3 Mass. App. Ct. 33 (1975).

[1] General Laws c. 127, § 83B, as amended through St. 1972, c. 172, § 2, presently provides in pertinent part: "If a prisoner escapes or attempts to escape from a prison camp all deductions from the sentence he is then serving shall be thereby forfeited" (hereinafter referred to as the prison camp escape provision).

[2] General Laws c. 127, § 129, as amended through St. 1967, c. 379, presently provides in pertinent part: "If a prisoner violates any rule of his place of confinement, the commissioner of correction . . . , upon the recommendation and evidence submitted to . . . [him] in writing by the principal officer, or officer in charge, shall decide what part, if any,

the legislative course of each of the statutes in which they are respectively contained, we conclude that the plaintiff is correct and that the judgment should be reversed.[3]

The prison camp escape provision, as it now reads (note 1, *supra*), was enacted in 1951 as part of a comprehensive program for the establishment of prison camps in State forests. St. 1951, c. 755, inserting §§ 83A-83D, inclusive, in chapter 127 of the General Laws.[4] At that time § 129 (as rewritten by St. 1948, c. 450 — "An Act relative to deductions from maximum sentences of prisoners") contained substantially the same provision for the administrative forfeiture of good conduct allowances as is presently in effect in that section, except that it made no provision for their restoration for subsequent good conduct (see note 2, *supra*). Section 129 also then provided that: "If during the term of

---

of such good conduct deduction from sentence or sentences shall be forfeited by such violation [the § 129 administrative good time forfeiture provision], and may likewise determine, in the event of the prisoner's subsequent good conduct, whether any or all of such deduction shall be restored [the § 129 good time restoration provision]." The good time forfeiture provision has been substantially unchanged since at least 1932. See G. L. (Ter. Ed.) c. 127, § 130.

[3] The judgment entered in the Superior Court declared that the Commissioner "does not have discretion to restore . . . earned good conduct deductions from a sentence which were forfeited under § 83B . . . ." Following the entry of judgment the plaintiff filed a motion for a new trial, one ground of which was that certain "newly discovered evidence [a Department of Correction administrative memorandum and a "Commissioner's Bulletin"] demonstrates clearly that escape from a prison camp is . . . violative of an express rule of the institution." The judge accepted the plaintiff's interpretation of the proffered documents and assumed, without deciding, that they "were in force and effect"; nevertheless he denied the motion as a matter of law on the ground that under G. L. c. 127, § 129, "the commissioner may not restore good conduct credits which the legislature has mandated to be forfeited under section 83B." The plaintiff's appeals are from the judgment and from the denial of his motion for a new trial.

[4] Section 83C (as so inserted), of which the defendant was convicted, provides: "A prisoner who escapes or attempts to escape from any prison camp or from land adjacent thereto or from the custody of the officer thereof or while being conveyed to and from any such camp may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one half years."

imprisonment ... such prisoner shall commit any offense of which he shall be convicted and sentenced, all deductions hereunder from the former sentence of imprisonment ... shall be thereby forfeited" (herein referred to as the 1948 conviction forfeiture provision).

In 1955 the Legislature enacted a thoroughgoing reorganization of the penal system by St. 1955, c. 770, entitled "An Act relative to the penal and reformatory institutions of the commonwealth." See 1955 Ann. Surv. of Mass. Law, §§ 12.1-12.13. It was based on a study of the entire correction system by a commission of penologists, headed by President Wessell of Tufts College. 1955 Sen. Doc. No. 750, "Report and Recommendations of the Governor's Committee to Study the Massachusetts Correctional System." The Wessell committee had been appointed soon after a four-day rebellion in Charlestown prison and was concerned with the problems of prison discipline. The study points out that good conduct allowances "are useful for institutional discipline, using the term discipline in the proper sense, that is, as an incentive to good morale, rather than in a negative sense, discipline maintained by punishment" (at 71), and further that "[t]he granting or denial of good-time allowances is a matter of institutional management and discipline. It should be controlled within the Department of Correction ... " (at 73). In accordance with this principle the Wessell committee recommended that the provision for automatic loss of good time upon conviction for an offense while in prison (the 1948 conviction forfeiture provision) be eliminated entirely; and this recommendation was embodied in the revised draft of § 129 of c. 127 submitted by the Wessell committee (see 1955 Sen. Doc. No. 750, at 142-143), in the draft of the Special Committee on the Reorganization of the Correctional System of the House of Representatives to which the Wessell report was referred (see 1955 House Doc. No. 3098, at 40-41), and in the ultimate legislation (St. 1955, c. 770, § 66), which rewrote § 129. The draft of the House committee bill and the ultimate legislation (though not the original draft of the Wessell committee bill) also added, to the provision in § 129 for the admin-

istrative forfeiture of good conduct deductions, a further provision for their restoration for "subsequent good conduct" (see note 2, *supra*). 1955 House Doc. No. 3098, at 41.

However, in spite of the elimination of the 1948 conviction forfeiture provision, both drafts and the ultimate legislation let stand the prison camp escape provision in § 83B (see note 1, *supra*). We do not view this as an inadvertance,[5] and it need not be regarded as an inconsistency. The prison camp escape provision — unlike the 1948 conviction forfeiture provision for ministerial forfeiture because of prison offenses — did not require a conviction and sentence. (Contrast G. L. c. 127, § 83C, note 4, *supra*.) We note the characterization of the § 83B prison camp escape provision in the Attorney General's brief (at 2) in *Gregoire, petitioner*, 355 Mass. 399 (1969), which dealt with the relationship between the prison camp escape provision and a 1963 provision (St. 1963, c. 535) with reference to convictions for offenses while in prison: — "Section 83B punishes escapes or attempted escapes as an infraction of rules whether or not a conviction is obtained, while section 129 punishes *any* act for which a conviction is secured . . ." (emphasis in original). See *Commonwealth* v. *Sneed,* 3 Mass. App. Ct. 33, 34 (1975), which deals with the situation in which "conviction of escape . . . follow[s] the imposition of a forfeiture of good time arising from the same occurrence," which forfeiture is administrative in nature. See cases cited. Compare *Munkley* v. *Hoyt,* 179 Mass. 108, 111 (1901).

Nor are administrative proceedings to determine whether an escape has occurred necessarily perfunctory; they may

---

[5] The Wessell committee and the House committee were both well aware of the prison camps. The Wessell committee urged the expansion of the prison camp program to include more units (1955 Sen. Doc. No. 750, at 32), and the ultimate legislation (St. 1955, c. 770, § 120) directed the establishment of three additional camps. The House committee bill specifically deleted from § 83B a provision for work time allowance which the Wessell committee had recommended be eliminated as unsound (1955 Sen. Doc. No. 750, at 73) but which its draft had only eliminated from § 129 and not from § 83B. See 1955 House Doc. No. 3098, at 32; 1955 Sen. Doc. No. 750, at 142 and 136; *Gildea* v. *Commissioner of Correction,* 336 Mass. 48, 50-51 (1957).

require factual determinations of some complexity. See *Commonwealth* v. *Gosselin*, 1 Mass. App. Ct. 849 (1973), *S.C.* 365 Mass. 116 (1974). And at least since *Wolff* v. *Mc-Donnell*, 418 U. S. 539, 557 (1974), such proceedings may also require the application of procedural safeguards comparable to those applicable to the administrative forfeiture provisions of § 129. See *Commonwealth* v. *Druken*, 356 Mass. 503, 506-509 (1969).

The application of the provision for administrative restoration of good time in § 129 to the good time administratively forfeited upon proceedings under § 83B seems to us to place the prison camp escape provision in the context of the Wessell committee's recommendation for greater administrative flexibility in the administration of good time; and thus the failure by the Wessell committee to make any change in the § 83B provision becomes understandable. Indeed, when the 1948 conviction forfeiture provision was reinstated by St. 1959, c. 445 (see 1963 Ann. Surv. Mass. Law § 11.3), no change was made in the prison camp escape provision (note 1, *supra*). Nor was any change made in that provision in 1963 when St. 1963, c. 535, eliminated the conviction forfeiture provision and substituted for it a provision that the only entitlement lost would be from the new sentence — though the 1963 statute was based on the recommendations of the Department of Correction (1963 House Doc. Nos. 20, 21), made together with recommendations for changes in good time allowances for inmates of prison camps. See 1963 House Doc. No. 22, which became G. L. c. 127, § 129C, by St. 1963, c. 164 ("An Act providing a further deduction of sentence for good conduct while confined at a prison camp").

That the forfeited deductions which are subject to restoration are directed by § 83B, rather than by § 129, is not particularly significant. Indeed, additional good time allowances for prison camp inmates are provided in the separate provision of G. L. c. 127, § 129C; and it would surely be anomalous to hold that, because that provision was separate from the provisions of § 129, the administrative forfeiture and restoration provisions of § 129 have no application

to these additional good time allowances. See *Common-wealth* v. *Hayes,* 372 Mass. 505, 508-512 (1977).

Accordingly, we view the "such deductions" which may be restored in § 129 as referring not only to those administratively forfeited in § 129, but also to those administratively forfeited in § 83B.

This comports with the teaching of *Gregoire, petitioner,* 355 Mass. at 400, that the statutes be read together as a harmonious system. See *Lembersky* v. *Parole Bd. of the Dept. of Correction,* 332 Mass. 290, 292-293 (1955); *Wood* v. *Commissioner of Correction,* 363 Mass. 79, 82, fn.5 (1973). It also comports with the more general rule that penal statutes be strictly construed in favor of a defendant. *Wood* v. *Commissioner of Correction,* 363 Mass. at 81, and cases cited.

BROWN, J. (dissenting, with whom Goodman, J., joins). I concur in my brother's dissent for the reasons given therein. The 1955 amendment to G. L. c. 127, § 129, St. 1955, c. 770, § 66, was intended by the Legislature to give prison officials more flexibility in disciplining prisoners. Construing G. L. c. 127, § 83B, in harmony with G. L. c. 127, § 129 (*Gregoire, petitioner,* 355 Mass. 399, 400 [1969]), it is our view that whether the prisoner had his good time taken away under either § 83B or § 129, the Commissioner must have the same discretion to partially or fully restore the good time. This more humane approach (see *Brown* v. *Commissioner of Correction,* 336 Mass. 718, 721 [1958]) would have the salubrious effect of providing greater incentive for good behavior on the prisoner's part while still providing à sufficient deterrent for escape. See *Wood* v. *Commissioner of Correction,* 363 Mass. 79, 83 (1973).